UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| JASON LEE SUTTON,<br><br>                    Plaintiff,<br>     v.<br><br>DARREN HEAWARD ET. AL.,<br><br>                    Defendants. | Case No. C17-5546-RJB-TLF<br><br>REPORT AND RECOMMENDATION<br><br>NOTED: August 24, 2018 |

The District Court has referred this 42 U.S.C. § 1983 action to United States Magistrate Judge Theresa L. Fricke. Now the undersigned, having reviewed plaintiff's complaint, the defendants' motion for summary judgment, and all related briefing and the relevant documents, recommends that defendants' motion for summary judgment be granted.

The defendants' motion addresses all the claims raised by plaintiff's complaint and establishes that defendants are entitled to judgment as a matter of law. Accordingly, this case should be resolved against the plaintiff by dismissal under Federal Rule of Civil Procedure 56, on the merits.

**INTRODUCTION**

In his 42 U.S.C. § 1983 complaint, plaintiff alleged that defendants Darren Heaward, Jeff Kettel, and Kenneth McKenney denied him due process and retaliated against him for engaging in protected conduct when they infracted and disciplined him after finding a metal object in his shower shoes. Dkt. 12, Complaint, at 12-33.

Plaintiff was incarcerated at Washington State Penitentiary in late 2016, when he was disciplined for assaulting another prisoner. Declaration of Sheri Hall, Dkt. 33, Exhibits 1, 2. He was placed in administrative segregation pending his assignment to Intensive Management Status. Hall Decl., Exhibit 1. He was transferred to Clallam Bay Corrections Center (CBCC) so he could be housed in its Intensive Management Unit.[1] *Id.*

Plaintiff was transported by bus to CBCC on either January 25, 2017, or February 1, 2017. Declaration of Jason Lee Sutton, Dkt. 13, p. 4; Declaration of Jeff Kettel, Dkt. 36, p. 2. Plaintiff was searched during the intake process to the Intensive Management Unit. Kettel Decl., p. 2. Defendant Jeff Kettel states that during the search, plaintiff passed him his shower shoe. *Id.* Kettel examined the shoe and thought that it looked suspicious. Id. He took the shoe to defendant Kenneth McKenney, a supervisor. *Id.* McKenney states that he looked at and felt the shoe and suspected it had a piece of metal inside it. Declaration of Kenneth McKenney, Dkt. 37, p. 2. A metal scanner confirmed that suspicion. *Id.* McKenney extracted a piece of metal that he thought looked like a handmade handcuff key. *Id.* Kettel infracted plaintiff for violating regulations prohibiting items "likely to be used in an escape" and "unauthorized tool[s]." Kettel Decl., p. 2.

Plaintiff attended a disciplinary hearing on February 8, 2017, based on this incident. Complaint, Exhibit 2, Dkt. 12, p. 56 (hearing notice); Declaration of Darren Heaward, Dkt. 35, p. 2. Heaward, the primary disciplinary hearings officer at CBCC, presided. Heaward Decl., pp. 1-2. Plaintiff presented evidence and made arguments in his defense. *Id.* at 2. Heaward continued the hearing to gather more information, including viewing the surveillance video of plaintiff's transfer. *Id.* When the hearing resumed on February 27, 2017, Heaward found plaintiff guilty of

---

[1] The Intensive Management Unit's purpose "is to keep out-of-control offenders under control until they are no longer considered a threat to the orderly operation of the facility." Dkt. 57-2, p. 38 (CBCC Offender Orientation Handbook). Prisoners in the IMU are confined to their cells for 23 hours per day and face additional restrictions during time spent outside their cells. *Id.*

- 2

1  both infractions. *Id.* He sanctioned plaintiff with 30 days loss of store and 30 days loss of liberty.

2  *Id.* The DOC later expunged the infraction from plaintiff's record, finding that the evidence for it

3  was inconclusive. *Id.* at 4; Response to Motion for Protective Order, Attachment 3, Dkt. 43, p.

4  35; Dkt. 63, Declaration of Michelle Walker, Dkt. 62, p. 2.

5      Plaintiff alleged in his complaint that Kettel, McKenney, and Heaward were retaliating

6  against him for his prior litigation against the DOC, including a lawsuit that named Heaward as a

7  defendant. Dkt. 12, pp. 29-32. Plaintiff also alleged that the defendants violated his right to due

8  process by relying on false evidence to discipline him and by refusing to consider "exculpatory

9  video-surveillance evidence." *Id.* And he alleged that Heaward further violated his due process

10  rights by declining to recuse himself as the hearings officer based on plaintiff's past lawsuit

11  against him. *Id.* Plaintiff sought declaratory and injunctive relief, as well as compensatory and

12  punitive damages. Dkt. 12, pp. 33-34.

13      For the reasons discussed below, the undersigned recommends that defendants' motion

14  for summary judgment be granted.

## STANDARD OF REVIEW

**A.      Summary Judgment**

Under Rule 56 of the Federal Rules of Civil Procedure (FRCP), "the court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." A party is required to support their arguments concerning whether a genuine dispute of material fact exists by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

FRCP 56(c)(1). The central issue is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).

The moving party bears the initial burden of showing "that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Where the moving party does not bear the burden at trial, it can carry its initial burden by presenting evidence that negates an essential element of the nonmoving party's case, or by establishing that the non-movant lacks the quantum of evidence needed to satisfy its burden at trial. *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000). Where the moving party bears the burden at trial, it can meet its initial burden by presenting evidence sufficient to demonstrate that no reasonable trier of fact could find for the nonmoving party; the evidence presented must establish beyond controversy every essential element of the claim. *Southern Cal. Gas. Co. v. City of Santa Ana*, 336 F.3d 885, 888-89 (9th Cir. 2003); *Soremekun v. Thrifty Payless, Inc.*, 509, F.3d 978, 984 (9th Cir. 2007).

If the moving party meets its initial responsibility, the burden then shifts to the nonmoving party to establish a genuine issue of material fact for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585-87 (1986). Genuine disputes are those for which the evidence is such that a "reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 257. Material facts are those which might affect the outcome of the suit under governing law. *Id.* A mere scintilla of evidence is insufficient to create a factual dispute. *Id.* at 252. Likewise, the nonmoving party cannot "defeat summary judgment with allegations in the complaint, or with unsupported conjecture or conclusory statements." *Hernandez v. Spacelabs Med. Inc.*, 343 F.3d 1107, 1112 (9th Cir. 2003).

1   In ruling on a motion for summary judgment, the Court must draw all reasonable
2   inferences in favor of the nonmoving party, *Matsushita Elec. Indus. Co.*, 475 U.S. at 587, and
3   may not weigh the evidence or make credibility determinations, *Anderson*, 477 U.S. at 255; *see*
4   *also Nigro v. Sears, Roebuck & Co.*, 784 F.3d 495, 497 (9th Cir. 2015) (district court cannot
5   disregard evidence at the summary judgment stage solely based on its self-serving nature, even if
6   it is uncorroborated).

**B.    Section 1983 Standard**

In order to sustain a cause of action under 42 U.S.C. §1983, a plaintiff must show (i) that he suffered a violation of rights protected by the Constitution or created by federal statute, and (ii) that the violation was proximately caused by a person acting under color of state law. *See Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991). The causation requirement of § 1983 is satisfied only if a plaintiff demonstrates that a defendant did an affirmative act, participated in another's affirmative act, or omitted to perform an act which he was legally required to do that caused the deprivation complained of. *Arnold v. IBM*, 637 F.2d 1350, 1355 (9th Cir. 1981) (quoting *Johnson v. Duffy*, 588 F.2d 740, 743-44 (9th Cir. 1978)).

## DISCUSSION

A.    <u>Denial of Due Process in February 2017 Disciplinary Proceedings</u>

Defendants move for summary judgment on plaintiff's due process claims on the grounds that (1) plaintiff did not suffer deprivation of any liberty interest from defendants' acts, and (2) plaintiff in any case received adequate procedural safeguards during the disciplinary proceedings.

The Due Process Clause of the Fourteenth Amendment confers both procedural and substantive rights. *See Armendariz v. Penman*, 75 F.3d 1311, 1318 (9th Cir. 1996), *overruled on other grounds by Crown Point Dev., Inc. v. City of Sun Valley,* 506 F.3d 851, 856–57 (9th Cir.

2007). Because plaintiff does not address and the complaint does not allege the elements of a substantive due process claim, the undersigned construes his claim as a procedural due process claim.[2] A § 1983 claim based on procedural due process has three elements: (1) a liberty or property interest protected by the Constitution; (2) a deprivation of the interest by the government; and, (3) lack of process. *Portman v. County of Santa Clara*, 995 F.2d 898, 904 (9th Cir. 1993).

1. <u>Liberty Interest</u>

The Fourteenth Amendment's procedural due process guarantee applies only when a constitutionally protected liberty interest is at stake. *See Ingraham v. Wright*, 430 U.S. 651, 672-73 (1977). Prisoners have "no liberty interest in freedom from state action taken within the sentence imposed" unless such action imposes "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 480, 484 (1995). The Supreme Court has identified three factors in determining whether such a hardship exists: how the challenged action compares to other inmates' conditions; the duration and degree of the restraining condition; and the effect of the action on the length of the prisoner's sentence. *Sandin*, 515 U.S. at 486-87; *see Ramirez v. Galaza*, 334 F.3d 850, 860 (9th Cir. 2003). This test "requires case by case, fact by fact consideration." *Keenan v. Hall*, 83 F.3d 1083, 1089 (9th Cir. 1996).

---

[2] The substantive component of the Due Process Clause protects individuals from the arbitrary deprivation of their liberty by government. *County of Sacramento v. Lewis*, 523 U.S. 833, 845-49 (1998). However, "only the most egregious official conduct can be said to be 'arbitrary in the constitutional sense.'" *Id*. at 846 (quoting *Collins v. Harker Heights*, 503 U.S. 115, 129 (1992)). The Supreme Court has identified the cognizable level of executive abuse of power as "that which shocks the conscience." *Id*. Plaintiff has not shown any evidence that would create a genuine issue of material fact as to whether defendants' actions were an executive abuse of power as that "shocks the conscience." *See id.*

1       Here, the evidence shows that plaintiff suffered the following consequences from the
2  defendants' actions, forming the basis of his due process claim:
3       First, plaintiff was demoted from Level 3 to Level 2 for 28 days beginning on February 2,
4  2017, the date of his infraction, and ending when he was promoted again on March 2, 2017. Dkt.
5  37, McKenney Decl. ¶ 8. As defendant McKenney explains in a declaration, CBCC has a three-
6  level incentive system for inmates in the Intensive Management Unit. Dkt. 37, ¶ 7. Level 2 is the
7  lowest and Level 4 the highest. *Id.* Inmates at higher levels can earn certain privileges: inmates at
8  Level 3 can have a radio in their cell, while inmates at level 4 can have a television. *Id.*
9  McKenney states that inmates can be demoted to a lower level based on their behavior, even if it
10 does not result in an infraction or results in an infraction that is later dismissed. *Id.*
11      Second, plaintiff lost store and library privileges for 30 days beginning after his hearing
12 concluded on February 27, 2017. Dkt. 35, Heaward Decl., ¶ 5 & Exhibit 1.
13      Because of the timing of these restrictions, plaintiff spent three or four days
14 simultaneously at Level 2 and without library or store privileges. *See* Dkt. 35, Heaward Decl.,
15 Exhibit 1; Declaration of Counsel, Dkt. 61, Exhibit 1.
16      Plaintiff cites no opinion in which a court has found the types of discipline he
17 experienced—30 days loss of store and library and 30 days loss of radio—to be an "atypical and
18 significant hardship." On the other hand, a number of courts have rejected claims based on
19 conditions that were similar or longer lasting and more severe. *See Rahman X v. Morgan*, 300
20 F.3d 970, 973-74 (8th Cir. 2002) (no atypical and significant hardship in deprivation of
21 television, certain property, access to commissary, and restrictions on outdoor exercise for 26
22 months); *Cosco v. Uphoff*, 195 F.3d 1221, 1224 (10th Cir. 1999) (no atypical and significant
23 hardship in new limits to type and quantity of individual property in cells); *Frazier v. Coughlin*,
24
25

1 81 F.3d 313, 315, 317 (2d Cir. 1996) (no atypical and significant hardship in loss of commissary,

2 recreation, package, and telephone privileges); *see also Smith v. Deemer*, 641 F. App'x 865, 868

3 (11th Cir. 2016) (conditions including no telephone, television, or writing surface for 15 days

4 was not atypical and significant hardship); *Grady v. Garcia*, 506 F. App'x 812, 814 (10th Cir.

5 2013) (no atypical and significant hardship in "no television and radio in . . . cell and loss of

6 canteen privileges and recreational time with the general prison population" for 105 days).

7       These cases are persuasive. Here, too, the three factors from *Sandin v. Conner* indicate

8 that plaintiff did not experience a significant and atypical hardship due to the challenged actions.

9 *See* 515 U.S. 472, 480, 484 (1995). No evidence suggests that the deprivation of radio, library,

10 and store privileges is extreme in comparison with other inmates' conditions. The restraining

11 conditions each lasted only 30 days; courts have found, persuasively, that similar conditions do

12 not amount to atypical and significant hardships even when imposed for much longer. *See*

13 *Grady*, 506 F. App'x at 814. And as noted above, the restriction on radio and other privileges

14 plaintiff lost in being demoted to Level 2 overlapped with his loss of library and store privileges

15 for only three or four days.

16       There is no evidence, either, that the conditions imposed as a result of defendants' acts

17 affected the length of plaintiff's sentence. Plaintiff contends—for the first time in his response to

18 the summary judgment motion—that he was not eligible to earn good-time credits while on

19 Intensive Management Status. Dkt. 57, p. 39. Plaintiff was on Intensive Management Status

20 because of discipline imposed at Washington State Penitentiary. Dkt. 33, Hall Decl., Ex. 1 at p.5,

21 and Ex. 2. He does not contend that defendants played a role in that decision. Defendant

22 McKenney states in a declaration that the 28-day demotion "did not really extend plaintiff's

23 stay" in the Intensive Management Unit. Dkt. 37, McKenney Decl., p. 3. This is because plaintiff

24

25

had to complete other programming requirements before he would be released and one of those programs would require him to wait "a couple of weeks" to get into. *Id.* (stating plaintiff was released from the IMU on May 12, 2017.) Plaintiff presents no contrary evidence to indicate that the infraction extended his term on Intensive Management Status. (Moreover, even if the infraction did extend plaintiff's IMU confinement for 30 days, this likely would not rise to the level of an atypical and significant hardship, either. *See Sandin*, 515 U.S. at 485-86 (prisoner did not have a liberty interest in staying in general population).)

Plaintiff seeks to show that he suffered an atypical and significant hardship by citing cases in which plaintiffs' liberty interest was implicated when they were placed in administrative segregation or solitary confinement and experienced certain severe conditions once there. Dkt. 57, Plaintiff's Response and Opposition, pp. 39-40. This argument is not relevant here, because plaintiff has presented no evidence that any of the defendants caused his placement in administrative segregation. Rather, plaintiff concedes and the record reflects that he was placed in administrative segregation, assigned to Intensive Management Status, and transferred to the Clallam Bay IMU because he assaulted another inmate while at Washington State Penitentiary. Dkt. 33, Hall Decl., Exhibits 1, 2.

Because there is no genuine issue of material fact as to whether plaintiff suffered an "atypical and significant hardship" from the due process violations he alleges, the Court should grant defendants' motion for summary judgment on plaintiff's due process claim.

2. <u>Adequate Process</u>

Summary judgment is also warranted on plaintiff's due process claim because, even if he can show he was deprived of a liberty interest, he has not shown a lack of constitutionally adequate process.

In the face of prison disciplinary sanctions, due process requires written notice before the disciplinary hearing, a written record of the proceedings, and the opportunity to present documentary evidence and call witnesses, unless such an allowance would interfere with institutional security. *Wolff v. McDonnell*, 418 U.S. 539, 564-66 (1974); *Duffy v. Riveland*, 98 F.3d 447, 457 (9th Cir. 1996). Fundamental fairness guaranteed by the Due Process Clause also requires sufficient proof. *Superintendent v. Hill*, 472 U.S. 445, 454 (1985). A hearing officer's decision satisfies this requirement if "some evidence" supports it—a standard that does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. *Id.* at 455. The "some evidence" standard does not apply to a correctional officer's accusation, however, when a plaintiff alleges the "officer has falsely accused him of violating a prison rule in retaliation for the prisoner's exercise of his constitutional rights. *Hines v. Gomez*, 108 F.3d 265, 269 (9th Cir. 1997).

Here, plaintiff does not contend that he was denied written notice, a written record of the disciplinary hearing, or the opportunity to present evidence and testimony. He instead asserts that he was denied an adequate process because defendant Heaward did not accord a surveillance video the exculpatory weight that plaintiff asserts it is due, and because Heaward was biased against him because of prior litigation. Dkt. 57, pp. 41-42. He appears to rely on his assertion that, because the surveillance video does not show him placing an item in his shoe, the evidence was insufficient to infract him.

This inference is unsupported. The written reports of Kettel and McKenney, including photographs of the shoe with the item in it, were "some evidence" that Heaward could rely on to infract plaintiff. *See* Dkt. 35, Heaward Decl., Exhibit 1; Dkt. 36, Kettel Decl., Exhibits 1, 2. Although plaintiff contends that those reports were retaliatory and their accusations fabricated,

1  that claim lacks sufficient evidence to survive summary judgment, as discussed below.
2  Moreover, plaintiff bases his due process claim on the disciplinary hearing and decision, not on
3  Kettel and McKenney's allegedly retaliatory written reports. *See* Dkt. 57, p. 42. The "some
4  evidence" standard of review should apply to the disciplinary hearing. *See Hines*, 108 F.3d at
5  269.

6        Moreover, plaintiff's assertion that Heaward was biased against him is based solely on
7  speculation. *See* Dkt. 44, Plaintiff Decl., pp. 5-6. Plaintiff asserts that Heaward had no evidence
8  for a guilty finding. This unsupported assertion, and Heaward being a defendant in one of
9  plaintiff's previous lawsuits, is not evidence with which a reasonable trier of fact could find that
10 bias affected the process or outcome of the hearing. *See* Transcript of Major Hearing, February 8
11 and February 27, 2017, Dkt. 57-2, p. 7; *compare Edwards v. Balisok*, 520 U.S. 641, 647 (1997)
12 (observing that "due process requirements for a prison disciplinary hearing . . . are not so lax as
13 to let stand the decision of a biased hearing officer *who dishonestly suppresses evidence* of
14 innocence" [emphasis added]).

15       Because plaintiff has not shown a genuine issue of material fact as to whether he was
16 denied constitutionally adequate process in the disciplinary proceedings, his due process claim
17 fails on summary judgment even if he has shown deprivation of a liberty interest.

18 B.     Retaliation against Plaintiff for Exercising First Amendment Rights

19       Plaintiff alleged in his complaint that all three defendants violated his First Amendment
20 rights by retaliating against him and using false evidence to chill his speech and prevent him
21 from filing more grievances and lawsuits. Dkt. 12, p. 30.

22       "Prisoners have a First Amendment right to file grievances against prison officials and to
23 be free from retaliation for doing so." *Watison v. Carter*, 668 F.3d 1108, 1114 (9th Cir. 2012)
24 (citation omitted); *Soranno's Gasco, Inc. v. Morgan*, 874 F.2d 1310, 1314 (9th Cir. 1989). For a
25

First Amendment retaliation claim to survive summary judgment, a prisoner must show five elements: "(1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005). Moreover, the plaintiff must show that his protected conduct was "the 'substantial' or 'motivating' factor behind the defendant's conduct." *Brodheim v. Cry*, 584 F.3d 1262, 1271 (9th Cir. 2009).

Here, plaintiff has failed to show a genuine issue of material fact as to at least two elements of a retaliation claim: that defendants' adverse action against him were because of his protected conduct, and that the action did not reasonably advance a legitimate correctional goal.

    1.    <u>Causation</u>

A plaintiff may show causation by demonstrating that the defendant knew of the protected conduct, and either: (1) there was proximity in time between the protected conduct and the allegedly retaliatory action, or (2) the defendant expressed opposition to the speech, or (3) the defendant's proffered reason for the adverse action was false or pretextual. *Corales v. Bennett*, 567 F.3d 554, 568 (9th Cir. 2009); *see Pratt v. Rowland*, 65 F.3d 802, 808 (9th Cir. 1995) (timing can be considered as circumstantial evidence of retaliatory event). Although timing can be considered as circumstantial evidence of retaliatory action, timing alone is generally not sufficient to establish retaliation. *See Pratt*, 65 F.3d at 808. Overall circumstances of the alleged retaliation must be considered and not simply the order of the events. *Id.*

Plaintiff has not presented evidence that would create a genuine issue of material fact as to causation.

1       First, he presents no evidence that Kettle or McKenney knew of the protected conduct—
2  his lawsuit naming Heaward as a defendant. He instead relies on a set of circumstances that he
3  asserts show "that the only motive left, for defendants' actions, [was] because of Sutton's
4  litigation history." Dkt. 57, Plaintiff's Response and Opposition, p. 43. (He also asserts, though,
5  that "Defendant Kettel did not need to have knowledge of Sutton's litigation history" to form a
6  conspiracy against him. *Id.*)

7       The circumstances relied on by plaintiff would not, even if proven, create a genuine issue
8  of material fact as to causation. He asserts that shortly before the brass button was found in his
9  shoe, he had been searched in CBCC's "Chain-Entry Area" and no such item had been found. He
10 asserts, "Defendant Kettel, and another Kettel, both worked with Heaward's office in order to
11 process the evidence, and set a Major Hearing date, along with having plaintiff served with the
12 report. . . . [O]ne 'Kettel' was assigned to work along-side Heaward in the Major Hearing's
13 office, and the other 'Kettel' wrote the infraction report," and "Defendant McKenney supported
14 defendant Kettel" by submitting an incident report. He asserts "Defendant McKenney admitted
15 that he knew plaintiff was "'on the way' to" CBCC before he arrived. He also asserts that,
16 according to Superintendent Haynes and contrary to defendants' implication, there were other
17 hearing officers available to hear his case. *See* Dkt. 57, pp. 43-45; Dkt. 32, p. 11; Heaward Decl.,
18 ¶ 2. And he asserts that Heaward found him guilty "even though we now know, that the 'video-
19 surveillance-recordings showed no evidence of plaintiff's guilt." Dkt. 57, p. 44.

20      These circumstances—considered together—do not constitute evidence from which a
21 reasonable trier of fact could find that plaintiff's protected conduct caused defendants to infract
22 him. Even if plaintiff's allegations are accurate, they are essentially a description of how his
23 disciplinary action was processed by DOC employees, layered with plaintiff's speculation of

24
25

retaliatory animus. Kettel and McKenney stated in declarations that they were not aware of plaintiff's litigation history at the time. Dkt. 36, Kettel Decl., p. 3; Dkt. 37, McKenney Decl., p. 3. Heaward stated that he remembered having prior interactions with plaintiff but did not remember being sued by him. Dkt. 35, Heaward Decl., p. 3. Speculation and innuendo cannot substitute for rebuttal evidence that defendants knew of plaintiff's litigation and were substantially motivated by it. *See Quiroz v. Horel*, 85 F. Supp. 3d 1115, 1124 (N.D. Cal. 2015) ("[M]ere speculation that defendants acted out of retaliation is not sufficient.").

    2.    <u>Legitimate Penological Goals</u>

The Ninth Circuit has found that preserving institutional order, discipline, and security are legitimate penological goals which, if they provide the motivation for an official act taken, will defeat a claim of retaliation. *Barnett v. Centoni*, 31 F.3d 813, 816 (9th Cir. 1994); *Rizzo v. Dawson*, 778 F.2d 527, 532 (9th Cir. 1985) ("Challenges to restrictions of first amendment rights must be analyzed in terms of the legitimate policies and goals of the correctional institution in the preservation of internal order and discipline, maintenance of institutional security, and rehabilitation of prisoners."). The burden is on the plaintiff to allege and prove that legitimate correctional purposes did not motivate the actions by prison officials about which he complains. *See Pratt*, 65 F.3d at 806, 808. District courts must "afford appropriate deference and flexibility" to prison officials "in the evaluation of proffered legitimate penological reasons for conduct alleged to be retaliatory." *Id.* at 807.

Plaintiff has not presented evidence that defendants' acts did not advance legitimate penological goals.

Plaintiff asserts that defendants' actions did not further a legitimate penological interest because, in short, he was innocent of the violation he was infracted for and thus "suffered (as an innocent person)." Dkt. 57, p. 50. Certainly, knowingly infracting innocent prisoners would not

1 serve a legitimate penological interest. But plaintiff has submitted no evidence that the
2 defendants knew he was innocent when they infracted him. He instead points to circumstances,
3 discussed above, from which he asks the Court to infer a conspiracy against him. No reasonable
4 trier of fact could do so.

5 Moreover, even if a wrongful infraction would serve no legitimate penological interest,
6 plaintiff has not submitted any evidence that he was *actually* innocent of having a makeshift cuff
7 key in his shoe. Although he asserts that "the Department of Corrections Headquarters agreed"
8 that he "could not have been responsible for these allegations made by defendants," Dkt. 57, p.
9 45, DOC did no such thing. Rather, Prison Discipline Program Manager Michelle Walker
10 reviewed the evidence, found that the evidence was not sufficient to support the infraction
11 decision, and determined that the infraction would therefore be cleared from his record. Dkt. 62,
12 Walker Declaration, p. 2. She "did not determine that Mr. Sutton was actually innocent of the
13 behavior." *Id.* While plaintiff elaborates on what he alleges was an unfair process, he notably
14 does not deny placing the cuff key in his shoe. To preserve institutional order, discipline, and
15 security, prison authorities have a legitimate penological interest in disciplining prisoners found
16 to possess escape tools like a handmade cuff key. *See Barnett*, 31 F.3d at 816; *see also* Wash.
17 Admin. Code 137-25-030 (infractions 560, 702).

18 C.     Injunctive Relief

19 In addition to compensatory and punitive damages, plaintiff's complaint requests that the
20 Court issue several forms of injunctive relief, including gathering and preserving evidence and
21 holding a new hearing. Dkt. 12, pp. 33-34. Plaintiff concedes in his response to the summary
22 judgment motion that his claims for injunctive relief are moot, as the infraction is already cleared
23 from his record. Dkt. 57, p. 48. Accordingly, the Court should dismiss plaintiff's claims for
24 injunctive relief.

25

D.      Qualified Immunity

Defendants assert that even if plaintiff has presented evidence sufficient to survive a summary judgment motion on either of his claims, qualified immunity nonetheless protects them from liability for damages.

Qualified immunity is an affirmative defense to damages liability and does not bar actions for declaratory or injunctive relief. *American Fire, Theft & Collision Managers, Inc. v. Gillespie*, 932 F.2d 816, 818 (9th Cir. 1991). To defeat the defendants' qualified immunity claims, plaintiff must show that they violated a statutory or constitutional right and that the "'right was clearly established at the time of the alleged misconduct.'" *Hamby v. Hammond*, 821 F.3d 1085, 1091 (9th Cir. 2016) (quoting *Taylor v. Barkes*, 135 S. Ct. 2042, 2044 (2015)). The Court may address these elements in either order. *Id.* at 1090. The Court must decide the qualified immunity issue at the summary judgment stage when it turns on issues of law. *Torres v. City of Los Angeles*, 548 F.3d 1197 (9th Cir. 2008).

In considering the first prong, the Court must ask, "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" *Saucier v. Katz*, 533 U.S. 194, 201 (2001).

As discussed above, plaintiff does not allege facts showing that any defendant's conduct violated his constitutional rights under either his due process or his retaliation claim.

Under the second prong, whether a right is "clearly established" depends on whether it was "'sufficiently clear that every reasonable official would have understood that what he is doing violates that right.'" *Hamby*, 821 F.3d at 1090-91 (quoting *Taylor*, 135 S.Ct. at 2044). "That is, existing precedent must have 'placed beyond debate the unconstitutionality of' the officials' actions, as those actions unfolded in the specific context of the case at hand." *Id.* at 1091 (quoting *Taylor*, 135 S.Ct. at 2044). The inquiry is thus highly fact-dependent. *See*

*Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) ("This inquiry 'must be undertaken in light of the specific context of the case, not as a broad general proposition.'" [quoting *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004)]). The burden is on the plaintiff to show that the right was clearly established. *See Sorrels v. McKee*, 290 F.3d 965, 969 (9th 2002).

Plaintiff fails to show a genuine issue of material fact on the second prong, as well. There is no genuine issue of material fact as to whether the right that defendants allegedly violated was clearly established. Drawing all reasonable inferences in plaintiff's favor, the facts in the record do not show that any of the defendants' actions were, "beyond debate," unconstitutional under existing precedent. *Hamby*, 821 F.3d at 1091.

Because plaintiff's claims fail at both prongs, the Court should determine that defendants are entitled to qualified immunity.

E. <u>Frivolous and Malicious Claims</u>

Defendants ask that in addition to dismissing the complaint the Court find plaintiff's claims to be frivolous and malicious and impose a strike under the Prison Litigation Reform Act (PLRA), 28 U.S.C. § 1915(g).

A claim is frivolous where it has "'no basis in law or fact.'" *Washington v. Los Angeles Cty. Sheriff's Dep't*, 833 F.3d 1048, 1055 (9th Cir. 2016) (quoting *Andrews v. King*, 398 F.3d 1113, 1121 (9th Cir. 2005)). The "term "frivolous' . . . embraces not only the inarguable legal conclusion, but also the fanciful factual allegation." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). A case is malicious where the complaint was "'filed with the intention or desire to harm another.'" *Id.* (quoting *King*, 398 F.3d at 1121). A claim is malicious if it is "plainly abusive of the judicial process or merely repeats pending or previously litigated claims." *Id.* (quoting *Abdul–Akbar v. Dep't of Corr.*, 910 F. Supp. 986, 999 (D. Del. 1995)).

Although plaintiff's factual allegations are highly speculative, they have a conceivable basis in fact and thus are not "fanciful." *See Neitzke*, 490 U.S. at 325. And while plaintiff fails to present evidence to support his claims at summary judgment, he stated plausible legal claims based on allegations that—if proven—could constitute violations of his constitutional rights. *Compare Kelbessa v. City of Seattle*, No. C17-323-RAJ, 2017 WL 1543277, at *2 (W.D. Wash. Apr. 28, 2017) ("Kelbessa alleges a conclusory, incomprehensible array of abuses, including enslavement, violence, economic harm, neglect, and psychological abuse. He alleges trillions of dollars in damages. These allegations lack any conceivable basis in fact and fail to state a plausible claim.").

Nor are plaintiff's claims malicious. Although defendants assert that plaintiff's prior litigation indicates that he is abusing the judicial process, this fact alone does not show maliciousness. *Cf. King*, 398 F.3d at 1121 (holding that 22 prior dismissed cases were not enough on their own to shift § 1915(g) burden to plaintiff to show that prior dismissals were not "strikes"). Nor do the defendants point to evidence to support their assertion that plaintiff is "the type of inmate the PLRA was designed to address" because they "use the courts to keep themselves entertained." Dkt. 60, p. 12.

Accordingly, the Court should not impose a strike.

## CONCLUSION

The Court should GRANT defendants' motion to dismiss, Dkt. 32.

The parties have **fourteen (14) days** from service of this Report and Recommendation to file written objections thereto. 28 U.S.C. § 636(b)(1); FRCP 6; FRCP 72(b). Failure to file objections will result in a waiver of those objections for purposes of appeal. *Thomas v. Arn*, 474

U.S. 140 (1985). Accommodating this time limitation, this matter shall be set for consideration on **August 24, 2018**, as noted in the caption.

Dated this 8th day of August, 2018.

*Theresa L. Fricke*

Theresa L. Fricke
United States Magistrate Judge

- 19